ORDERED PUBLISHED

FILED

NOV 21 2012

SUSAN M SPRAUL, CLERK
U.S. BKCY. APP. PANEL
OF THE NINTH CIRCUIT

## UNITED STATES BANKRUPTCY APPELLATE PANEL

### OF THE NINTH CIRCUIT

| | |
|---|---|
| In re: | BAP No.   CC-12-1093-KiNoPa |
| STEPHANIE A. DIENER, | Bk. No.   10-10042-RR |
| Debtor. | |
| | |
| STEPHANIE A. DIENER, | |
| Appellant, | |
| v. | **O P I N I O N** |
| SANDRA K. MCBETH, Chapter 7 Trustee, | |
| Appellee. | |

Argued and Submitted on September 20, 2012
at Pasadena, California

Filed - November 21, 2012

Appeal from the United States Bankruptcy Court
for the Central District of California

Honorable Robin Riblet, Bankruptcy Judge, Presiding

Appearances:   Janet Audrey Lawson, Esq. appeared for appellant, Stephanie A. Diener; David Y. Farmer, Esq. of Farmer & Ready appeared for appellee, Sandra K. McBeth, Chapter 7 Trustee.

Before:   KIRSCHER, NOVACK,[1] and PAPPAS, Bankruptcy Judges.

---

[1]   Hon. Charles D. Novack, United States Bankruptcy Judge for the Northern District of California, sitting by designation.

KIRSCHER, Bankruptcy Judge:

Appellant, chapter 7[2] debtor Stephanie Diener ("Diener"), appeals an order from the bankruptcy court disallowing her claimed exemption for retirement funds she asserted constituted "spousal support" under CAL. CODE CIV. PROC. ("CCP") § 703.140(b)(10)(D). Although the bankruptcy court applied an incorrect standard of law, such error was harmless, and we AFFIRM.

## I. FACTUAL BACKGROUND AND PROCEDURAL HISTORY

Diener and her former spouse, David Diener ("David"), were married in 1979. After twenty-eight years of marriage, the couple separated and ceased living together as husband and wife in 2007. David filed for divorce that same year.

During the parties' protracted dissolution proceeding, Diener filed a chapter 7 bankruptcy case on January 6, 2010. Diener's Schedule I reflected that her only income was the monthly support payment from David of $2,338.00. At the time of the exemption hearing, Diener was still unemployed.

Approximately one year after Diener filed for bankruptcy, the state court entered a Judgment of Dissolution of Marriage on January 26, 2011. Incorporated into the Judgment was a Marital Settlement Agreement (collectively the "MSA") between Diener and David. Both parties had been represented by counsel throughout the negotiations leading to the MSA. Among other assets, Diener was to receive all interest in a Met Life Non-Qualified Retirement

---

[2] Unless specified otherwise, all chapter, code, and rule references are to the Bankruptcy Code, 11 U.S.C. §§ 101-1532, and the Federal Rules of Bankruptcy Procedure, Rules 1001-9037. The Federal Rules of Civil Procedure are referred to as "Civil Rules."

Account (the "Met Life Account"), which had an approximate value of $194,058.86. She was also given 54.52% of the funds in David's 401(k) account, or about $600,296.00. Both of these items were listed in the MSA under the heading: "V. Specific Provisions Regarding Retirement Accounts." The Met Life Account appears again in Schedule B of the MSA as: "Property Awarded and/or Confirmed to Respondent [Diener]." For these accounts, the parties were responsible for any income tax liabilities associated with the distributions of the retirement funds when received.

Under the MSA, Diener was also to receive monthly spousal support payments of $2,338.00 from David until May 1, 2011, or the death of either party, or Diener's remarriage, whichever event occurred first. The spousal support provision appears separately in the MSA as: "VII. Spousal Support." Support payments were to be taxable to Diener and deductible by David for income tax purposes. Diener expressly waived her right to seek or receive any spousal support from David after May 1, 2011, and no minor children existed from the marriage. Diener also agreed to make reasonable good faith efforts to become self-supporting, and further represented that she was in good health and that she did not suffer from any physical or emotional condition that would impair her ability to support herself. The MSA further provided that "[N]o Court shall have jurisdiction to award Respondent [Diener] any spousal support in addition to, beyond, or different from the spousal support set forth in Paragraph A. [the $2,338 per month] above."

After entry of the MSA, on March 9, 2011, Diener filed amended Schedules B and C listing the Met Life Account and the

-3-

401(k) account and claiming them as exempt retirement accounts under CCP § 704.115(b).[3] Appellee, chapter 7 trustee Sandra K. McBeth ("Trustee"), objected to the claimed exemption for the Met Life Account, contending that: (1) the amended schedules were filed in bad faith due to Diener's previous concealment of the asset; (2) the Met Life Account was not an exemptible retirement account; and (3) the funds were not necessary for Diener's support.[4] Diener opposed Trustee's objection, denying any bad faith. In her declaration in support filed on June 20, 2011, Diener stated that her spousal support had ended on May 1, 2011, and that the Met Life Account "was supposed to replace [her] spousal support" and she had no access to the funds because they were tied up in the dispute. After a hearing on June 29, 2011, the bankruptcy court entered an order on July 7, 2011, disallowing Diener's exemption of the Met Life Account under CCP § 704.115(b). Although we do not have a transcript from the June 29 hearing, the order does not make any reference to bad faith as a basis for denying the exemption. Diener did not appeal that order.

On June 29, 2011, Diener filed another amended Schedule C, this time exempting the Met Life Account as "spousal support" under CCP § 703.140(b)(10)(D).[5] Trustee again objected,

---

[3] CCP § 704.115(b) provides: "All amounts held, controlled, or in process of distribution by a private retirement plan, for the payment of benefits as an annuity, pension, retirement allowance, disability payment, or death benefit from a private retirement plan are exempt."

[4] Trustee has never objected to the over $600,000 Diener received from David's 401(k) account, so that retirement account is not at issue in this appeal.

[5] CCP § 703.140(b)(10)(D) provides that a debtor may exempt: "Alimony, support, or separate maintenance, to the extent reasonably necessary for the support of the debtor and any dependent of the debtor."

-4-

contending that based on the plain language of the MSA and <u>Stout v. Prussel</u>, 691 F.2d 859 (9th Cir. 1982), or the factors set forth in <u>Leppaluoto v. Combs (In re Combs)</u>, 101 B.R. 609 (9th Cir. BAP 1989), if the bankruptcy court should find the MSA ambiguous, the Met Life Account was part of Diener's property settlement and was not spousal support. Diener opposed Trustee's objection. The bankruptcy court set an evidentiary hearing on the matter for January 20, 2012.

Both parties filed trial briefs. Trustee re-raised her previous arguments, contending that the Met Life Account was not spousal support under the MSA. Diener contended that only two issues were present in this matter: (1) whether or not the Met Life Account was spousal support despite being referred to as "retirement" or a division of property in the MSA; and (2) if it was spousal support, was the sum "reasonably necessary" for her support given her exempt award of approximately $600,000 from David's 401(k) account. Diener contended that under <u>Shaver v. Shaver</u>, 736 F.2d 1314 (9th Cir. 1984) and <u>In re Combs</u>, <u>supra</u>, the court must look beyond the labels provided in the MSA and determine whether the Met Life Account was intended to be spousal support, which Diener argued she clearly needed given her circumstances. Diener asserted that she and her divorce counsel, Debra Ann Perkins ("Perkins"), would testify that the Met Life Account was a "buy-out" of Diener's spousal support, which she favored because she wanted nothing further to do with David and because David's support checks were often late and occasionally bounced. Finally, Diener contended that her expert witness, Lawrence Mitchell ("Mitchell"), would testify that the Met Life

-5-

Account was "reasonably necessary" for her support.

The evidentiary hearing went forward on January 20, 2012. Trustee's only witness for her case in chief was Diener. Diener testified that she recognized Trustee's exhibit of the MSA, that she had signed it, and that she was represented by counsel at the time she entered into it. Trustee then rested.

For her case in chief, Diener's counsel called Perkins, Diener, and Mitchell. When asked about the spousal support provision in the MSA, Perkins testified that Diener's original intent was to waive spousal support completely, but Diener eventually requested a few months of spousal support to cover the period of time between entry of the divorce decree and when she would receive the retirement accounts and other assets. Perkins further testified that the intent of the MSA was to buy out Diener's spousal support, and that Diener received more than the usual 50/50 split of assets because she was waiving spousal support. On cross-examination, Perkins testified that although Diener had wanted a lump sum of spousal support, because the family law court could not order David to pay support in a lump sum, Perkins advised Diener to take a larger share of the community property to compensate for her waiver of support. Perkins testified that she discussed each of the provisions of the MSA with Diener before she signed it.

Diener then moved for a directed verdict,[6] which the

---

[6] Diener refers to the motion as one for a directed verdict. Motions for directed verdicts are now called motions for judgment as a matter of law and are governed by Civil Rule 50. This rule applies in bankruptcy cases only if the matter is tried before a jury. See Rule 9015(c). Because this was a bench trial, Diener's motion was a motion for a judgment on partial findings under Rule 7052(c), which incorporates Civil Rule 52(c). We shall treat it as such for purposes of appeal.

-6-

bankruptcy court promptly denied without explanation. Following that ruling, Diener continued with her case in chief. After calling expert witness Mitchell, Diener re-called Perkins to the stand to testify about settlement negotiation letters circulated between Diener's and David's divorce counsel just prior to the MSA. On cross-examination about the letters, Perkins testified that David was not initially willing to give Diener as much property as she was seeking to compensate her for waiving spousal support, so Diener's subsequent offers gave her less property but included spousal support. According to Perkins, Diener eventually agreed to waive spousal support because David agreed to give her a larger share of the community property, which included the Met Life Account and the 401(k) account.

Diener testified that the Met Life Account was intended to be a buy-out of her permanent spousal support, which she wanted because David's support payments were arriving late, some of the checks were bouncing, and because she wanted no contact with him.

During Diener's closing argument, the bankruptcy court asked counsel to cite a case where a court allowed a specific, nonmodifiable spousal support provision in a divorce decree to be trumped by another provision that the proponent argued was also a spousal support provision. Counsel, while citing several cases, several of which were unpublished, could not cite a case so holding.

After a brief recess to review some of the cases Diener's counsel cited at the hearing and in her brief, the bankruptcy court entered its oral ruling in favor of Trustee. The court initially noted that nearly all cases regarding whether an award

-7-

is in the nature of spousal support are in the context of nondischargeability under § 523(a)(5), as opposed to an exemption, which was "a different situation."  Hr'g Tr. (Jan. 20, 2012) 88:2.  Nevertheless, the court proceeded to discuss In re Combs, a nondischargeability case, and the factors a court can consider in determining whether an award in a divorce decree is in the nature of spousal support or a property settlement.  In considering the Combs factors, the court concluded that the Met Life Account was not spousal support; it was a division of property, and therefore not exempt under CCP § 703.140(b)(10)(D).  The court further noted that the MSA's express provision for spousal support which, under Stout, could be considered in determining whether an award in a divorce decree is support or property division, was an important factor in its decision to disallow the exemption.

The bankruptcy court entered an order sustaining Trustee's objection and disallowing Diener's exemption of the Met Life Account as spousal support under CCP § 703.140(b)(10)(D) on February 10, 2012.  Diener timely appealed.

## II. JURISDICTION

The bankruptcy court had jurisdiction under 28 U.S.C. §§ 1334 and 157(b)(2)(B).  We have jurisdiction under 28 U.S.C. § 158.

## III. ISSUES

1.   Did the bankruptcy court clearly err in determining that the Met Life Account was not exempt spousal support under CCP § 703.140(b)(10)(D)?

2.   Did the bankruptcy court abuse its discretion in denying

-8-

Diener's motion under Civil Rule 52(c)?[7]

## IV. STANDARDS OF REVIEW

Whether contract language is ambiguous is a question of law reviewed de novo. Miller v. United States, 363 F.3d 999, 1003-04 (9th Cir. 2004); Winet v. Price, 6 Cal. Rptr. 2d 554 (Cal. Ct. App. 1992).

"We review the bankruptcy court's factual determination that a debt was for alimony, maintenance, or support for clear error." Seixas v. Booth (In re Seixas), 239 B.R. 398, 401 (9th Cir. BAP 1999). A bankruptcy court's factual finding is clearly erroneous if it is illogical, implausible, or without support in the record. Retz v. Samson (In re Retz), 606 F.3d 1189, 1196 (9th Cir. 2010) (citing United States v. Hinkson, 585 F.3d 1247, 1261-62 & n.21 (9th Cir. 2009)(en banc)). We may affirm on any ground supported by the record. Shanks v. Dressel, 540 F.3d 1082, 1086 (9th Cir. 2008).

## V. DISCUSSION

**A. The bankruptcy court did not clearly err when it determined that the Met Life Account was not exempt spousal support under CCP § 703.140(b)(10)(D).**

**1. Sections 541 and 522, Rule 4003(c), and CCP § 703.140(b)(10)(D)**

Section 541(a)(1) provides that "property of the estate" includes "all legal or equitable interests of the debtor in property as of the commencement of the case." Section 522(b)

---

[7] Diener also raised a third issue on appeal regarding whether or not she was collaterally estopped from opposing Trustee's objection to the exemption. Beyond raising the issue, Diener's opening brief does not provide any facts or argument to support it. Trustee also did not respond to this issue. As a result, it has been abandoned. Acosta-Huerta v. Estelle, 7 F.3d 139, 144 (9th Cir. 1992)(issues raised in opening brief but not supported by argument are deemed waived).

-9-

permits a debtor to exempt from property of the estate either the property set forth in section 522(d) or, alternatively, any property that is exempt under state law "that is applicable on the date of the filing of the petition." California has elected to "opt out" of the federal exemption scheme, so California residents filing for bankruptcy are limited to the exemptions afforded under state law. In re Rolland, 317 B.R. 402, 412 (Bankr. C.D. Cal. 2004)(citing Wolf v. Salven (In re Wolf), 248 B.R. 365, 367 (9th Cir. BAP 2000) and In re Rostler, 169 B.R. 408, 411 (Bankr. C.D. Cal. 1994)). Therefore, substantive issues regarding the allowance or disallowance of the claimed exemption at issue are governed by California law.

Under CCP § 703.140(b)(10)(D), a California debtor may exempt "Alimony, support, or separate maintenance, to the extent reasonably necessary for the support of the debtor and any dependent of the debtor." California exemption statutes are to be liberally construed, as their manifest purpose is to "'sav[e] debtors and their families from want by reason of misfortune or improvidence.'" Turner v. Marshack (In re Turner), 186 B.R. 108, 113 (9th Cir. BAP 1995)(quoting In re Crosby's Estate, 41 P.2d 928, 930 (Cal. 1935)).

A claimed exemption is "'presumptively valid.'" Tyner v. Nicholson (In re Nicholson), 435 B.R. 622, 630 (9th Cir. BAP 2010)(citing Carter v. Anderson (In re Carter), 182 F.3d 1027, 1029 n.3 (9th Cir. 1999)). "[I]f a party in interest timely objects, 'the objecting party has the burden of proving that the exemptions are not properly claimed.'" Id. (quoting Rule 4003(c)). Initially, this means that the objecting party has the

-10-

burden of production and the burden of persuasion. In re Carter, 182 F.3d at 1029 n.3. The objecting party must produce evidence to rebut the presumptively valid exemption. Id. Once rebutted, the burden of production then shifts to the debtor to come forward with unequivocal evidence that the exemption is proper. Id. The burden of persuasion, however, always remains with the objecting party. Id.

**2. Applicable test for determining whether an award in a divorce decree is in the nature of support for purposes of exemption.**

For purposes of determining whether an exception to discharge applies to an obligation under § 523(a)(5),[8] a bankruptcy court is not bound by the characterization given to an obligation by a state court. In determining whether an obligation is intended for spousal support, the bankruptcy court must look beyond the language of the dissolution judgment to the intent of the parties and to the substance of the obligation. In re Shaver, 736 F.2d at 1316 (citations omitted); In re Combs, 101 B.R. at 615 (court should look to substance of the obligation in the settlement agreement and generally disregard labels and titles).

However, to determine whether a spousal support exemption applies, some disagreement exists over whether a bankruptcy court has the authority to look behind the label applied to an award by the state court in the dissolution judgment. Compare In re Lahndorf, 2006 WL 2662704, at *3 (Bankr. N.D. Iowa 2006)(exemption under Iowa law; looking behind state court's language in divorce decree would be an impermissible collateral attack) and In re

---

[8] Section 523(a)(5) excepts from discharge any debt for a domestic support obligation.

-11-

Bentley, 245 B.R. 684, 686-87 (Bankr. D. Kan. 2000)(applying Kansas exemption law and determining that alimony lien labeled as such by divorce decree was entitled to exemption because state court decision was entitled to full faith and credit), with In re Miller, 424 B.R. 171, 177 (Bankr. M.D. Pa. 2010)(applying same criteria to matters under § 523(a)(5) and § 522(d)(10)(D)); In re Rogers, 349 B.R. 667, 670-71 (Bankr. D. Idaho 2005)(citing Shaver and concluding that the criteria applied in discharge exception cases under § 523(a)(5) applies in cases of exemption); In re Ellertson, 252 B.R. 831, 833 (Bankr. S.D. Fla. 2000)(for purposes of both dischargeability and exemptions, a bankruptcy court may look behind a label applied by a state court to ascertain the true nature of an award); In re Sheffield, 212 B.R. 1019, 1020-21 (Bankr. M.D. Fla. 1997)("[l]ogic dictates that what constitutes alimony for purposes of § 523(a)(5), and what constitutes alimony for purposes of § 522(d)(10)(D), should involve the same criteria") and In re Joseph, 157 B.R. 514, 517-18 (Bankr. D. Conn. 1993)(noting the dearth of case law on the issue and concluding that no readily apparent reason exists for why a bankruptcy court should use different standards in reviewing alimony awards in the nondischargeability instance and in the exemption instance). Notably, in all of the cases holding that the same criteria should apply to both circumstances, with the exception of In re Rogers, the exemption at issue was for spousal support under federal law - § 522(d)(10)(D) - not state law, which controls here.

Here, the bankruptcy court questioned whether the criteria set forth in discharge exception cases under § 523(a)(5) to determine if an award is in the nature of support should apply in

-12-

the context of an exemption under § 522.  Few published decisions exist on this issue, and neither the Ninth Circuit nor the BAP have weighed in on it.  However, the Fifth Circuit analyzed this issue in depth in <u>Milligan v. Evert (In re Evert)</u>, 342 F.3d 358 (5th Cir. 2003).

In the pre-BAPCPA case of <u>Evert</u>, the Fifth Circuit explored the issue of whether the same approach for determining what constitutes alimony, support and maintenance in the discharge exception context under § 523(a)(5) should apply to exemptions under § 522(d)(10)(D).  While recognizing that many of the courts to address the issue had determined that the same criteria should apply, the <u>Evert</u> court articulated several arguments against doing this.  <u>Id.</u> at 366-67.  Primarily, the court reasoned that the statutes differed in their underlying purpose:

> A liberal or broad interpretation of "alimony" may be particularly appropriate under section 523(a)(5) because of the desire to avoid harming someone who is completely innocent and depends on their former spouse for their support (and often for their children's support as well) <u>because</u> of the bankruptcy of that former spouse. Moreover, there is an incentive on the part of the debtor in the dischargeability context to try to characterize the obligation as something other than support so it can be discharged. In contrast, in the section 522(d)(10)(D) context, the person seeking the exemption is the individual who has taken bankruptcy so there is an arguable element of fault and there is no incentive to hurt an innocent third party, except perhaps the creditor. In the section 523(a)(5) context, the need to look beyond the labels may stem from the fact that the obligated party has an incentive to craft the agreement to disguise support as part of a property settlement so it is dischargeable. However, in the exemption context of section 522(d)(10)(D), the incentive would be with the obligee party receiving what is actually a property settlement to disguise it as support so it is sheltered in bankruptcy. We also note that in the section 523(a)(5) context the interests of the debtor and former spouse in the proceedings before the bankruptcy court are virtually always adverse, while in the section 522(d)(10)(D) context they are likely to be aligned against the third

-13-

party creditor. Therefore, in the latter context it becomes more than normally questionable to rely on oral testimony of the spouse and former spouse as to their prior subjective intent with respect to the character of the indebtedness where that testimony runs counter to the clear purport of the relevant documents, which were likely all that would have been available to a third party extending credit.

Id. at 367 (emphasis in original).

The Evert court further observed that when Congress amended § 523 to create § 523(a)(15)[9] in 1994, it did not provide a parallel amendment in § 522.  The court reasoned that the lack of a parallel amendment to § 522 perhaps suggested "a congressional intent not to have a scheme of exemptions as broad as the scheme of discharge disallowance in respect to obligations to former spouses arising in the divorce context."  Id. at 368.

_____

[9]  Former § 523(a)(15), in effect from 1994 to 2005, provided an exception to discharge for obligations:

(15) not of the kind described in paragraph (5) that is incurred by the debtor in the course of a divorce or separation or in connection with a separation agreement, divorce decree or other order of a court of record, a determination made in accordance with State or territorial law by a governmental unit unless-

(A) the debtor does not have the ability to pay such debt from income or property of the debtor not reasonably necessary to be expended for the maintenance or support of the debtor or a dependent of the debtor and, if the debtor is engaged in a business, for the payment of expenditures necessary for the continuation, preservation, and operation of such business; or

(B) discharging such debt would result in a benefit to the debtor that outweighs the detrimental consequences to a spouse, former spouse, or child of the debtor.

Although § 523(a)(15) was amended again in 2005, the fact that § 522 lacked a parallel amendment still provides a compelling argument against applying the same criteria in determining whether an award constitutes alimony, support and maintenance in cases of nondischargeability and exemption.

-14-

Ultimately, the Evert court did not decide whether the same criteria should be applied to both statutes. Instead, it articulated its own criteria for determining whether alimony or other domestic support obligations are exempt under § 522(d)(10)(D). Id. at 368.[10] The bankruptcy court in In re Korwin, 379 B.R. 80, 85 (Bankr. W.D. Pa. 2007), adopted the Evert factors, and concluded that it did not need to "look beyond the label" of property division in a state court divorce decree because the order was not ambiguous and clearly reflected the intent of the parties. The marital settlement agreement at issue in Korwin also contained a separate provision for alimony.

We find persuasive the arguments raised in Evert for applying different criteria in determining what constitutes alimony, support and maintenance in the discharge exception

---

[10] Evert set forth the following criteria for courts to apply in cases of exemption for spousal support or other domestic support obligations:

> We hold only that, at least for purposes of section 522(d)(10)(D), where in the agreed divorce decree there is 1) also a meaningful separate alimony provision, 2) the obligation in question is described as being part of the property division, 3) the label given to the obligation in question is matched by its actual characteristics, and 4) the evidence does not suggest the parties conspired to disguise the true nature of the obligation in order to subvert the bankruptcy or tax laws, there is no ambiguity necessitating the use of the Nunnally factors to essentially work backwards to determine the nature of the obligation.

Id. at 368.

Although the Evert court said it was not deciding the issue of whether the same criteria should be applied in cases of nondischargeability and exemption, by rejecting the Nunnally factors (Nunnally v. Nunnally (In re Nunnally), 506 F.2d 1024, 1026-27 (5th Cir. 1975)), which are not unlike the Combs factors, we believe the court essentially did decide the issue (in the negative) by its rejection of the notion that the same test should apply in both circumstances.

-15-

context as opposed to the exemption context.  Nonetheless, we decline to adopt the four factors set forth in <u>Evert</u> because we believe California law, which governs here, dictates that we apply the state's statutory rules of contracts to the MSA.

**3.  Analysis**

"'Marital settlement agreements incorporated into a dissolution judgment are construed under the statutory rules governing the interpretations of contracts generally.'"  <u>In re Marriage of Simundza</u>, 18 Cal. Rptr. 3d 377, 380 (Cal. Ct. App. 2004)(quoting <u>In re Marriage of Iberti</u>, 64 Cal. Rptr. 2d 766, 769 (Cal. Ct. App. 1997)); <u>In re Marriage of Benjamins</u>, 31 Cal. Rptr. 2d 313, 315 (Cal. Ct. App. 1994).  When a contract is reduced to writing, the intention of the parties is to be ascertained from the writing alone, if possible.  CAL. CIV. CODE § 1639; <u>In re Marriage of Simundza</u>, 18 Cal. Rptr. 3d at 380.  The objective intent, as evidenced by the words of the contract, rather than subjective intent of one of parties, controls interpretation.  <u>Founding Members of the Newport Beach Country Club v. Newport Beach Country Club, Inc.</u>, 135 Cal. Rptr. 2d 505, 514 (Cal. Ct. App. 2003).  "The parties' undisclosed intent or understanding is irrelevant to contract interpretation."  <u>Id.</u> (citations omitted).

"Any ambiguity in the language of [a martial settlement agreement] must be construed in favor of the right to spousal support."  <u>In re Marriage of Iberti</u>, 64 Cal. Rptr. 2d at 769 (citing <u>In re Marriage of Vomacka</u>, 683 P.2d 248, 254 (Cal. 1984); <u>In re Marriage of Ousterman</u>, 54 Cal. Rptr. 2d 403, 406 (Cal. Ct. App. 1996); and <u>In re Marriage of Brown</u>, 41 Cal. Rptr. 2d 506, 509 (Cal. Ct. App. 1995)).  "A term of the agreement is ambiguous if

-16-

it is susceptible of more than one reasonable interpretation." Id. (citing Tahoe Nat'l Bank v. Phillips, 480 P.2d 320, 335 (Cal. 1971); Hayter Trucking, Inc. v. Shell W. E & P, Inc., 22 Cal. Rptr. 2d 229 (Cal. Ct. App. 1993); In re Marriage of Paul, 219 Cal. Rptr. 318, 320 (Cal. Ct. App. 1985)). Extrinsic evidence is admissible to prove the parties' intent as to ambiguous terms in a marital settlement agreement. Id. (citing CCP § 1856(g); Garcia v. Truck Ins. Exch., 682 P.2d 1100 (Cal. 1984); Cont'l Baking Co. v. Katz, 439 P.2d 889, 895 (Cal. 1968); Roddenberry v. Roddenberry, 51 Cal. Rptr. 2d 907 (Cal. Ct. App. 1996); and In re Marriage of Trearse, 241 Cal. Rptr. 257 (Cal. Ct. App. 1987)).

"When the language of the judgment incorporating the marital settlement agreement is clear, explicit, and unequivocal, and there is no ambiguity, the court will enforce the express language." Id. (citing CAL. CIV. CODE § 1638, which provides: "The language of a contract is to govern its interpretation, if the language is clear and explicit, and does not involve an absurdity."); Lucas v. Elliott, 4 Cal. Rptr. 2d 746 (Cal. Ct. App. 1992); In re Marriage of Zlatnik, 243 Cal. Rptr. 454 (Cal. Ct. App. 1988); Hogoboom & King, CAL. PRAC. GUIDE: Family Law § 9.123, pp. 9-30 to 9-32 (The Rutter Group 1997)). "Extrinsic evidence of the parties' intentions is inadmissible to vary, alter, or add to the terms of an unambiguous agreement." Id. (citing CCP § 1856; Tahoe Nat'l Bank, 480 P.2d at 331; Cont'l Baking Co., 439 P.2d at 895; Flynn v. Flynn, 265 P.2d 865 (Cal. 1954); Fox v. Fox, 265 P.2d 881 (Cal. 1954); Barham v. Barham, 202 P.2d 289 (Cal. 1949); Hayter Trucking, Inc., 22 Cal. Rptr. at 237; Estate of Butler, 252 Cal. Rptr. 210 (Cal. Ct. App. 1988); and Hogoboom & King, CAL.

-17-

PRAC. GUIDE: Family Law at §§ 9.124-9.126, pp. 9-32 to 9-32.1)).

Trustee argued throughout her case that the language of the MSA was not ambiguous, and therefore no extrinsic evidence was necessary to determine the parties' intent. In other words, the court did not need to apply the Combs factors to determine if the Met Life Account was intended to be spousal support. She continues to argue this point on appeal. Despite ordering an evidentiary hearing on the matter, at various times during the hearing the bankruptcy court also indicated that the MSA was not ambiguous:

MS LAWSON: All right. How about the case Combs?

COURT: Oh, Combs. Right. Right here.

MS LAWSON: Yes.

COURT: Combs. 'Bankruptcy Courts have employed various factors to determine the intent of parties of an ambiguous divorce decree. Some of the factors include' -- and then it discusses eight factors that Mr. Farmer went through. What about this divorce degree [sic] is ambiguous?

. . . .

MS. LAWSON: I believe it misses the mark when you say the MSA is –

COURT: Unambiguous.

Hr'g Tr. (Jan. 20, 2012) 76:12-20; 86:7-9.

In reviewing the MSA, the Met Life Account is listed in the section expressly dealing with property division and, specifically, the division of retirement accounts under the labels "Specific Provisions Regarding Retirement Accounts" and "Property Awarded and/or Confirmed to Respondent." The MSA contains a separate, express provision labeled "Spousal Support," which provides for monthly spousal support of $2,338, but does not

-18-

mention the Met Life Account. Diener received the monthly support payments of $2,338 for the five months as ordered. Notably, the spousal support provision in the MSA expressly prohibits a court from awarding Diener any spousal support in addition to, beyond, or different from the support of the $2,338 per month she was to receive for five months. The MSA further provides that Diener expressly waived her right to seek or receive any spousal support from David after May 1, 2011.

We conclude that the language of the MSA is clear, explicit, unequivocal, and not reasonably susceptible to any other interpretation. Based on the objective language of the MSA, the Met Life Account was nothing more than a division of property. Diener's subjective intent that it was intended to be a buy-out of her spousal support appears nowhere in the MSA. The fact Diener received a larger share of the marital estate does not necessarily render the terms of the MSA ambiguous, entitling her to the presumption that the award of the Met Life Account was spousal support. See In re Marriage of Iberti, 64 Cal. Rptr. 2d at 769. As a result, the bankruptcy court was required to enforce the MSA's express language and treat the Met Life Account as the division of property. Id.; CAL. CIV. CODE § 1638. While it may be less money than she hoped for, our interpretation of the MSA does not lead to an absurd result. Diener still has over $600,000 she received from David's 401(k) account, which is fully exempt.

Accordingly, extrinsic evidence of the parties' intentions was not admissible to vary, alter, or add to the terms of the MSA. In re Marriage of Iberti, 64 Cal. Rptr. 2d at 769; CCP § 1856(g). Thus, the bankruptcy court erred when it allowed extrinsic

-19-

evidence to determine the parties' intent. It further erred in applying In re Combs, which applies only in cases of nondischargeability, or, even if it were relevant here, applies only in cases where the divorce decree is ambiguous as to alimony, support, or separate maintenance. No ambiguity exists here. However, the bankruptcy court's error was harmless because it ultimately concluded that Diener could not overcome the express terms of the MSA, and found that the Met Life Account was not spousal support exempt under CCP § 703.140(b)(10)(D). Thus, we must reject Diener's arguments that the bankruptcy court failed to give credence to Diener's and Perkins's testimony that the Met Life Account was intended to be spousal support, or that it improperly relied on Stout.

The bankruptcy court's finding that the Met Life Account was not exempt spousal support under CCP § 703.140(b)(10)(D) is not illogical, implausible, or without support in the record. In re Retz, 606 F.3d at 1196. Therefore, the court did not clearly err in disallowing it. As a result, no determination as to whether the Met Life Account was "reasonably necessary" for Diener's support was required.

**B.  The bankruptcy court did not abuse its discretion when it denied Diener's motion under Civil Rule 52(c).**

According to Diener, Trustee failed to present a prima facie case for disallowing the claimed exemption for the Met Life Account by the close of her case in chief. At the evidentiary hearing, Trustee rested immediately after Diener testified that she had signed the MSA, and that she was represented by counsel at the time she entered into it. Diener contends that at the time of

-20-

her oral motion under Civil Rule 52(c), the evidence clearly established that the lump sum payout of the Met Life Account was "in the nature of support" and that Trustee had failed to produce any evidence to rebut the presumption of Diener's valid exemption. Thus, contends Diener, the bankruptcy court erred when it denied her motion.

Civil Rule 52(c) provides:

> If a party has been fully heard on an issue during a nonjury trial and the court finds against the party on that issue, the court may enter judgment against that party on a claim or defense that, under the controlling law, can be maintained or defeated only with a favorable finding on that issue. The court may, however, decline to render any judgment until the close of the evidence . . . .

Although we are not convinced that an evidentiary hearing was even necessary, given Civil Rule 52(c)'s use of the permissive "may," the bankruptcy court had discretion to defer entering judgment until it had heard all the evidence. We cannot conclude that the bankruptcy court abused its discretion in denying the motion, especially in light of our affirmance of the court's factual finding that the Met Life Account was not spousal support.

Furthermore, it is undisputed that after the court denied Diener's motion, she proceeded to offer evidence on her own behalf at trial. Where a party introduces evidence on her own behalf after she has moved for relief under Civil Rule 52(c), she waives her right to appeal for relief under Civil Rule 52(c). See Fed. Ins. Co. v. HPSC, Inc., 480 F.3d 26, 32 (1st Cir. 2007). Accordingly, we can only treat Diener's argument as a challenge to the factual and legal sufficiency of the bankruptcy court's determinations based on all the evidence. Id. We have already

-21-

done so, and conclude that the bankruptcy court, while it applied an incorrect standard of law, did not clearly err in its ultimate factual determination that the Met Life Account was not exempt spousal support under California law.

### VI. CONCLUSION

For the foregoing reasons, we AFFIRM the order of the bankruptcy court.