[No. B030037. Second Dist., Div. Seven. Oct. 20, 1988.]

Estate of EMILY KATHRYN BUTLER, Deceased.
JOHN D. BUTLER, Petitioner and Appellant, v.
CAROL STALLCUP et al., Objectors and Respondents.

**COUNSEL**

Samuel R. Wasserson for Petitioner and Appellant.

Randall L. Hite for Objectors and Respondents.

## OPINION

**WOODS (N. F.), J.**—The appellant appeals from an order of the superior court denying his petition to determine heirship wherein appellant sought a portion of the estate of his predeceased spouse as a pretermitted heir under Probate Code section 6560. We reverse.

### FACTUAL SYNOPSIS

The appellant and his deceased wife, Emily Kathryn Butler, were married on March 21, 1986. Prior to marriage, decedent had executed a will on August 26, 1983, giving her entire estate to her children by a prior marriage.

Appellant and decedent entered into an antenuptial agreement on March 6, 1986. Decedent subsequently died on November 17, 1986.

The decedent did not execute a testamentary instrument at any time during the period between her marriage to appellant and her subsequent demise.

Appellant's petition to determine heirship, heard on July 15, 1987, was denied. The order of the superior court sitting in probate in pertinent part contained the following findings and conclusions: ". . . FINDS that the rational expectations of the parties petitioner and decedent at the time of the execution of their 'Antenuptial Agreement' on March 6, 1986, was that each surrendered interest in the property or expectancies of the other, including testamentary rights therein, unless a subsequent testamentary instrument [*sic*] were executed. . . .

"CONCLUDES that if the 'Antenuptial Agreement,' executed by the parties petitioner and decedent on March 6, 1986, be valid and subsisting there is no impediment to the carrying out of the terms of decedent's Will executed August 26, 1983. . . ."

The "Antenuptial Agreement" is silent as to the right of either party to the agreement to take from the estate of the other upon demise. In summation the "Antenuptial Agreement" defines the separate property of each party being brought to the marriage and that the property so defined will remain the separate property of each following the marriage.

Curiously, a document attached to the "Antenuptial Agreement" entitled "Attorney's Representations" was executed by an attorney who purported to represent both parties to the "Antenuptial Agreement" on terms and

conditions set forth in his representation. In that document, the attorney states in pertinent part: "I have conferred with both of you together. We reviewed all the property possessed by both or either of you, whenever and wherever acquired, and discussed, after an analysis of all the facts and documents you have placed before me, the possible classification and suggested disposition of such property on the possible dissolution of your marriage, *or on the death of either of you*." (Italics added.)

With the exception of the phrase contained in the "Attorney's Representations," i.e., "or on the death of either of you" no further evidence appears in the record directly pertaining to the right of the respective spouses to share in a deceased spouse's estate.

Pursuant to stipulation of the parties, the "Attorney's Representations" document was admitted into evidence with the "Antenuptial Agreement" all as part of exhibit I at time of trial.

### CONTENTION ON APPEAL

Appellant's sole contention on appeal appears to be that the trial court erred as a matter of law by interpreting the "Attorney's Representations" document to constitute a waiver by appellant of his right to participate in the estate of his predeceased spouse as an omitted heir under Probate Code section 6560 and section 6561. We are unaided by the benefit of a respondents' brief on appeal, the respondents having been denied the right to file a late respondents' brief.

### DISCUSSION

Initially, we note that our attention has not been invited to any California authority dealing with a surviving spouse's "written" waiver of rights, contained in an antenuptial agreement, to take under the estate of a predeceased spouse. Our independent search for such authority does not produce any decisions on the point.

Therefore, we must first determine whether or not existing California cases dealing with a written separation agreement or marital agreement in anticipation of a divorce or dissolution of marriage are applicable to an antenuptial contract case by analogy, when such agreements contain a waiver of rights by a surviving spouse to take under the estate of a predeceased spouse.

In making this determination, it is obvious even to the uninitiated that such a comparison reveals a distinct difference. In the case of a marital or

separation agreement, the motive of the parties by entering into such an agreement is to define rights upon an impending termination of the marriage state which is admittedly in a state of decay. The reverse is true with respect to an antenuptial agreement wherein the motive of the parties is to foster or perpetuate conditions which will help preserve a forthcoming marriage. Such being the case, we find it difficult to find a complete analogue in the respective types of agreements. Therefore those citations by appellant dealing with the death of a spouse following the execution of a separation agreement or marital agreement containing a waiver of rights to take from the estate of a predeceased spouse are noted and given the weight they are entitled to in light of the above-discussed distinction.

Probate Code section 6560 is declarative of public policy in this state pertaining to the rights of a posttestamentary, but omitted, spouse to take from the estate of a predeceased spouse. Probate Code section 6560 provides as follows: "Except as provided in Section 6561, if a testator fails to provide by will for his or her surviving spouse who married the testator after the execution of the will, the omitted spouse shall receive a share in the estate consisting of the following property in the estate:

"(a) The one-half of the community property that belongs to the testator under Section 100.

"(b) The one-half of the quasi-community property that belongs to the testator under Section 101.

"(c) A share of the separate property of the testator equal in value to that which the spouse would have received if the testator had died intestate, but in no event is the share to be more than one-half the value of the separate property in the estate."

The rights of a posttestamentary spouse omitted in the will of his or her predeceased spouse under Probate Code section 6560 can be defeated, according to the Legislature, in the following manner under Probate Code section 6561: "The spouse does not receive a share of the estate under Section 6560 if any of the following is established:

"(a) The testator's failure to provide for the spouse in the will was intentional and that intention appears from the will.

"(b) The testator provided for the spouse by transfer outside the will and the intention that the transfer be in lieu of a testamentary provision is shown by statements of the testator or from the amount of the transfer or by other evidence.

"(c) *The spouse made a valid agreement waiving the right to share in the testator's estate.*" (Italics added.)

The record in this case presents an issue only under Probate Code section 6561, subdivision (c).

### The "Attorney's Representations" Document

■■■ Initially, does the "Attorney's Representations" document signed only by the attorney and which is not directly incorporated into the "Antenuptial Agreement" contain sufficient evidence from which a trier of fact can appropriately find a waiver of rights to take from the estate of the predeceased spouse? We think not.

We note that, in essence, the document merely appears to be a self-serving statement made by the attorney to protect himself against the possibility of a future legal malpractice claim which might arise as a result of engaging in a dual representation.

On appeal the appellant somewhat obliquely raises the question of violation of the parol evidence rule when he asserts in his brief that the "Attorney's Representations" document created uncertainty and ambiguity in the "Antenuptial Agreement." We agree that if the document lacked consistent additional terms to explain or supplement the terms of the "Antenuptial Agreement" then it would be violative of the parol evidence rule if a proper objection had been made at time of trial. Code of Civil Procedure section 1856 provides in pertinent part: "(a) Terms set forth in a writing intended by the parties as a final expression of their agreement with respect to such terms as are included therein may not be contradicted by evidence of any prior agreement or of a contemporaneous oral agreement.

"(b) The terms set forth in a writing described in subdivision (a) may be explained or supplemented by evidence of consistent additional terms unless the writing is intended also as a complete and exclusive statement of the terms of the agreement." We discern that the "Attorney's Representations" document is violative of the parol evidence rule. The document is not executed by the parties and the record is bereft of any evidence that the attorney signed the document as agent for both parties. Additionally, the document is not incorporated into the "Antenuptial Agreement" and appears from its face to serve only the interest of the attorney and not the parties to the contract. Finally, the "Attorney's Representations" document creates an ambiguity in the "Antenuptial Agreement" by inserting conditions which are in and of themselves far from being sufficient to clearly supplement the "Antenuptial Agreement." ■■■ However, respondents

failed to object to the document being admitted on grounds of violation of the parol evidence rule at time of trial and indeed stipulated that the document could be received in evidence. Any error as a result of the failure to object is therefore waived and respondents may not raise the issue for the first time on appeal. (See *Shain* v. *Peterson* (1893) 99 Cal. 486, 487 [33 P. 1085].)

We are therefore left with what we determine to be appellant's sole ground of appeal, i.e., the existence of an erroneous interpretation of the documents in question by the trial court as a matter of law. ■ It is well established that in the absence of conflicting evidence the interpretation of a written instrument is one of law, and the reviewing court can give the writing its own independent interpretation. (*Estate of Platt* (1942) 21 Cal.2d 343, 352 [131 P.2d 825].) See *Estate of Shannon* (1965) 231 Cal.App.2d 886, 890-891 [42 Cal.Rptr. 278] where the court states: "The rationale of the cases cited in support of the rule giving preference to the findings of the trial court seems to be generally that where any extrinsic evidence is introduced, particularly oral evidence, which legally can and should be considered by the trial court, the trial judge is in a better position to analyze this evidence and declare the truth than is an appellate court which can only review a lifeless record. But much evidence in such a record is just as lifeless in the trial court as it is in the record on appeal. This is true where the evidence consists only of writings, without *oral* testimony, where appraisal of a witness giving oral testimony does not enter as a factor into the conclusion reached by the trier of fact. It is undeniable that an appellate court, reading the reporter's transcript of a witness' testimony is not in the same position of vantage to analyze and resolve questions concerning veracity, intelligence, accuracy of observation and recall and the many other factors that enter into a finding of fact or conclusion of law as is a trial judge. But where only the interpretation of written instruments is concerned, unaffected by extrinsic evidence, is not an appellate court, after studying the briefs on appeal, listening to the arguments of counsel, and thereafter engaging in a full discussion of the problem among the justices, in a more adequately informed position than is the trial judge and therefore better able to interpret the intent of the parties? Each case has its own particular distinguishing feature. The quantum, kind and quality of evidence is never the same in any two cases, as all lawyers and judges know. We conclude that in any case where extrinsic evidence is completely lacking or the quantum and quality thereof does not in reason place the trial judge in a better position to form an accurate interpretation of writings, or in other words, where interpretation is essentially a question of law rather than of fact , an appellate court is not bound by the determination of the trial court." (Original italics.)

Our California Supreme Court engaged in interpreting an "agreement for separation" in *Jones* v. *Lamont* (1897) 118 Cal. 499 [50 P. 766] which

contained language suggestive of a spouse's waiver of right to inherit. The case is not completely analogous to the case at hand as previously analyzed. However, we do think the case is declarative of sound public policy where the court states: "We do not think the courts should come to the aid of these contracts so as to deprive either the husband or wife of the property rights growing out of the married relation, except where there is a clear and unmistakable intention to barter away such rights." (*Id.,* at p. 502.)

In essence, we are left with Probate Code sections 6560 and 6561 as declared public policy of this state defining the rights of a posttestamentary but omitted spouse to take from the estate of a predeceased spouse. Bearing in mind the admonition in *Jones, supra,* we do not find from this record an intention of the parties to barter away their rights to take from the estate of the other. We find that the trial court's interpretation of the "Attorney's Representations" document to the contrary to be erroneous as a matter of law.

We hold that the court erred in denying the appellant's petition for heirship. We reverse and remand for further proceedings in accordance with the views expressed herein.

Appellant to recover costs on appeal.

Lillie, P. J., and Johnson, J., concurred.