55 Cal.App.4th 1434 (1997)
In re the Marriage of WALTER P. IBERTI and CHRISTINE PATRICIA FLANNERY IBERTI.
WALTER P. IBERTI, Respondent,
v.
CHRISTINE PATRICIA FLANNERY IBERTI, Appellant.
Docket No. B105345.
Court of Appeals of California, Second District, Division Five.
June 25, 1997.
*1436 COUNSEL
Simon Taub for Appellant.
Jacqueline Fox for Respondent.
[Opinion certified for partial publication.[*]]
OPINION
TURNER, P.J. 

I. INTRODUCTION
Walter P. Iberti (husband) brought an order to show cause in the trial court to terminate spousal support. The court concluded Christine Patricia Flannery Iberti (wife) was not entitled to spousal support after April 30, 1995. Wife appeals from the order. We affirm.

*1437 II. BACKGROUND
The parties were married on September 2, 1989, and separated on December 15, 1991. A judgment of dissolution of marriage was entered on August 12, 1992. The judgment incorporated the parties' marital settlement agreement. Regarding spousal support, the judgment provided as follows: "[Husband] shall pay to [wife] as permanent spousal support the sum of $2,100.00 per month payable in full on the first day of each month commencing August 15, 1992 and continuing for a period of forty eight (48) months through and including July 15, 1996. Except as expressly herein provided, said spousal support shall not be subject to modification as to amount or duration regardless of when application is made therefor. Said spousal support shall irrevocably terminate no later than July 15, 1996 and shall terminate prior thereto upon the first occurrence of any of the following events: ... [¶] (3) After July 15, 1993, if [wife] is not a full time student at an accredited college or university successfully completing 10 units each semester or quarter and is actively pursuing a Bachelors degree." (Italics added.) The judgment recites: "The Court finds that the parties have carefully bargained in this Judgment concerning all issues relating to spousal support, including the amount and duration. The termination date(s) concerning spousal support specified herein are absolute. Upon occurrence of any of the termination date(s) herein set forth, this Judgment cuts off forever the right of [wife] to ask for spousal support, the power of the Court to order spousal support, and the right of [wife] to receive spousal support. No Court shall have jurisdiction to extend or order any spousal support beyond the dates herein set forth and [wife] shall not make application therefor." (Italics added.)
The court retained jurisdiction as follows: "Except as otherwise specifically provided herein, the parties shall be subject to the continuing jurisdiction of the Court to settle any disputes arising from or to interpret this Judgment and to make any further orders necessary to enforce the provisions of this Judgment. However, nothing contained in this paragraph shall be deemed to modify the provisions re spousal support contained herein." (Italics added.)
On December 21, 1995, husband filed an order to show cause to terminate spousal support. He also sought to obtain a partial reimbursement of spousal support paid. The ground for the order was that wife had not been and was not enrolled in college. It was undisputed wife had dropped out of college as of May 1995. Husband stopped paying spousal support as of November 1, 1995. Wife presented evidence she had dropped out of college because of her mother's mental illness and subsequent suicide, in August 1995. Further, *1438 wife argued she had returned to college in January 1996.[1] Husband disputed wife's assertion she left school to spend time with her mother. With respect to the parties intentions, wife stated: "In all of the discussions leading up to the Judgment, it was understood that the spousal support would only terminate if I went to work and earned money instead of attending school." Husband stated: "[W]ife admits the spousal support is non-modifiable for forty eight months contingent on her going to school. The Judgment makes no reference to contingencies such as illness, because that was not stipulated to. [Wife] is aware of this. This is why we agreed to the ten (10) units versus a normal load of twelve (12) to sixteen (16) units. The Judgment took into account all of those issues." The trial court ruled spousal support was terminated as of April 30, 1995. Wife was ordered to reimburse husband for spousal support paid in the months of May through October 1995 in the sum of $12,600. The court concluded, "Pursuant to the [marital dissolution judgment], the court has no jurisdiction as to the issue of spousal support...."
The order was entered on May 31, 1996. On June 10, 1996, wife requested a statement of decision. The request was denied as untimely.

III. DISCUSSION
.... .... .... .... .... .... ....[*]
(1a) Wife contends the trial court had jurisdiction to consider her reasons for leaving school. She further asserts: "What has to be read into the language of the Judgment is that [wife] receives spousal support while she is a full-time student at an accredited college, but if for some reason she is unable in good faith to attend college, then her time is extended." It is argued the spousal support provision is ambiguous as to the circumstances surrounding wife's ability to stay in school. Wife explains the purported ambiguity as follows: "What is meant by the language in the Judgment that says that spousal support terminates after July 15, 1993 if [wife] is not a full-time student at an accredited college? [¶] Does it mean that the spousal support terminates if [wife] is involved in an automobile accident and in the hospital for an extended period of time? [¶] Does it mean that spousal support terminates if [wife] has a mental breakdown? What if one of her children becomes ill and she has to leave school for an extended period of time in order to nurse the child? [¶] To reduce the argument to absurdity, *1439 what if [wife] is on a vacation and her bus is hijacked and she is made a prisoner for a period of 90 days and is no longer a full-time student at an accredited college[?]" We find that while the trial court retained jurisdiction to interpret the judgment incorporating the marital settlement agreement,[2] no interpretation was required; there was no ambiguity and no evidence of a meaning as to which the language of the agreement was reasonably susceptible which was favorable to wife.
(2) When, as here, no conflicting extrinsic evidence is offered of an interpretation as to which the language of a marital settlement agreement is reasonably susceptible, and the facts are otherwise undisputed, we apply the unambiguous contract terms to the undisputed facts as a matter of law. (Messenger v. Messenger (1956) 46 Cal.2d 619, 626 [297 P.2d 988]; Fox v. Fox (1954) 42 Cal.2d 49, 52 [265 P.2d 881]; Lucas v. Elliot (1992) 3 Cal. App.4th 888, 892 [4 Cal. Rptr.2d 746]; Estate of Butler (1988) 205 Cal. App.3d 311, 317 [252 Cal. Rptr. 210]; In re Marriage of Williams (1972) 29 Cal. App.3d 368, 377 [105 Cal. Rptr. 406].) Marital settlement agreements incorporated into a dissolution judgment are construed under the statutory rules governing the interpretations of contracts generally. (Civ. Code, § 1635 et seq.; In re Marriage of Benjamins (1994) 26 Cal. App.4th 423, 429 [31 Cal. Rptr.2d 313]; Verner v. Verner (1978) 77 Cal. App.3d 718, 724 [143 Cal. Rptr. 826]; e.g., In re Marriage of Trearse (1987) 195 Cal. App.3d 1189, 1192 [241 Cal. Rptr. 257]; cf. In re Marriage of Garrity and Bishton (1986) 181 Cal. App.3d 675, 683 [226 Cal. Rptr. 485] [premarital agreement]; see Hogoboom & King, Cal. Practice Guide: Family Law (The Rutter Group 1997) ¶ 9:115, p. 9-30; contra, In re Marriage of Katz (1988) 201 Cal. App.3d 1029, 1036, fn. 4 [247 Cal. Rptr. 562]; In re Marriage of Benson (1985) 171 Cal. App.3d 907, 912 [217 Cal. Rptr. 589].)
Any ambiguity in the language of such an agreement must be construed in favor of the right to spousal support. (In re Marriage of Vomacka (1984) 36 Cal.3d 459, 469 [204 Cal. Rptr. 568, 683 P.2d 248]; In re Marriage of Ousterman (1996) 46 Cal. App.4th 1090, 1096 [54 Cal. Rptr.2d 403]; In re Marriage of Brown (1995) 35 Cal. App.4th 785, 790 [41 Cal. Rptr.2d 506].) A term of the agreement is ambiguous if it is susceptible of more than one reasonable interpretation. (Tahoe National Bank v. Phillips (1971) 4 Cal.3d 11, 22-24 [92 Cal. Rptr. 704, 480 P.2d 320]; Hayter Trucking, Inc. v. Shell Western E&P, Inc. (1993) 18 Cal. App.4th 1, 15 [22 Cal. Rptr.2d 229]; In re Marriage of Paul (1985) 173 Cal. App.3d 913, 917 [219 Cal. Rptr. 318, 13 A.L.R.4th 427].) Provided it supports a meaning to which the language is reasonably susceptible, extrinsic evidence is admissible to prove the parties' intent as to ambiguous terms in a marital settlement agreement. (Code Civ. Proc., § 1856, subd. (g); Garcia v. Truck Ins. Exchange (1984) 36 Cal.3d *1440 426, 435 [204 Cal. Rptr. 435, 682 P.2d 1100]; Continental Baking Co. v. Katz (1968) 68 Cal.2d 512, 522 [67 Cal. Rptr. 761, 439 P.2d 889]; Roddenberry v. Roddenberry (1996) 44 Cal. App.4th 634, 645 [51 Cal. Rptr.2d 907]; In re Marriage of Trearse, supra, 195 Cal. App.3d at p. 1192.) As a matter of substantive law, extrinsic evidence cannot be relied on to support a meaning to which the agreement is not reasonably susceptible. (Riley v. Bear Creek Planning Committee (1976) 17 Cal.3d 500, 508-509 [131 Cal. Rptr. 381, 551 P.2d 1213]; In re Marriage of Dawley (1976) 17 Cal.3d 342, 353, fn. 7 [131 Cal. Rptr. 3, 551 P.2d 323]; Tahoe National Bank v. Phillips, supra, 4 Cal.3d at p. 23; Estate of Gaines (1940) 15 Cal.2d 255, 264-265 [100 P.2d 1055].)
When the language of the judgment incorporating the marital settlement agreement is clear, explicit, and unequivocal, and there is no ambiguity, the court will enforce the express language. (Civ. Code, § 1638; Lucas v. Elliot, supra, 3 Cal. App.4th at pp. 892-894; In re Marriage of Zlatnik (1988) 197 Cal. App.3d 1284, 1290-1291 [243 Cal. Rptr. 454]; see Hogoboom & King, Cal. Practice Guide: Family Law, supra, ¶ 9.123, p. 9-32.) Extrinsic evidence of the parties' intentions is inadmissible to vary, alter, or add to the terms of an unambiguous agreement. (Code Civ. Proc., § 1856; Tahoe National Bank v. Phillips, supra, 4 Cal.3d at p. 23; Continental Baking Co. v. Katz, supra, 68 Cal.2d at pp. 521-522; Flynn v. Flynn (1954) 42 Cal.2d 55, 60-61 [265 P.2d 865]; Fox v. Fox, supra, 42 Cal.2d at p. 52; Barham v. Barham (1949) 33 Cal.2d 416, 422-423 [202 P.2d 289]; Hayter Trucking, Inc. v. Shell Western E&P, Inc., supra, 18 Cal. App.4th at pp. 13-15; see Estate of Butler, supra, 205 Cal. App.3d at p. 316; Hogoboom & King, Cal. Practice Guide: Family Law, supra, ¶¶ 9.124-9.126, pp. 9-32 to 9-32.1.)
(1b) The language of the present judgment incorporating the marital settlement agreement is clear, explicit, and unequivocal. Wife was to receive spousal support after July 15, 1993, only so long as she was a full-time student, at an accredited institution of higher education, "successfully completing 10 units each semester or quarter," and "actively pursuing a Bachelors degree." As set forth in the judgment, the parties "carefully bargained" concerning this provision. The agreement is not reasonably susceptible of wife's proffered interpretation. She asks this court to add qualifying language to the agreement. To do so would substantially alter the agreement reached by the parties as clearly and explicitly stated in the judgment. This we cannot do. (Civ. Code, § 1638; Code Civ. Proc., § 1856; Riley v. Bear Creek Planning Committee, supra, 17 Cal.3d at pp. 508-509; In re Marriage of Dawley, supra, 17 Cal.3d at p. 353, fn. 7; Tahoe National Bank v. Phillips, supra, 4 Cal.3d at p. 23; Continental Baking Co. v. Katz, supra, 68 Cal.2d at pp. 521-522; Flynn v. Flynn, supra, 42 Cal.2d at pp. 60-61; Fox v. Fox, supra, 42 Cal.2d at p. 52; Barham v. Barham, supra, 33 Cal.2d at pp. *1441 422-423; Estate of Gaines, supra, 15 Cal.2d at pp. 264-265; Hayter Trucking, Inc. v. Shell Western E&P, Inc., supra, 18 Cal. App.4th at pp. 13-15; Lucas v. Elliot, supra, 3 Cal. App.4th at pp. 892-894; In re Marriage of Zlatnik, supra, 197 Cal. App.3d at pp. 1290-1291; see Estate of Butler, supra, 205 Cal. App.3d at p. 316; Hogoboom & King, Cal. Practice Guide: Family Law, supra, ¶¶ 9.123 to 9.126, pp. 9-32 to 9-32.1.) The parties could have agreed the education requirement would be subject to a good faith or reasonable ability qualification. (E.g., Hilton v. McNitt (1957) 49 Cal.2d 79, 82 [315 P.2d 1].) No such language was included. Further, it was undisputed wife dropped out of college as of May 1995. Under the plain language of the judgment, spousal support absolutely, irrevocably terminated when wife ceased attending college and the trial court was without jurisdiction to extend it. Therefore, the trial court properly concluded wife was not entitled to spousal support after April 30, 1995.
Wife relies on decisional authority that is distinguishable from the present case. In the case of In re Marriage of Brown, supra, 35 Cal. App.4th at pages 789-790, involving a marriage of long duration, the Court of Appeal held the trial court had jurisdiction to modify a spousal support award where the judgment did not contain explicit language precluding modification. Under Family Code section 4336, subdivision (a), where a marriage is of long duration (generally 10 years or more), and absent a written agreement to the contrary, a court retains jurisdiction indefinitely as to spousal support. (35 Cal. App.4th at pp. 789-790.) The ambiguous language at issue in Brown was as follows: "`After the payment of the 60th [monthly] installment of [spousal support] ..., [husband's] obligation to pay spousal support to [wife] shall terminate forever and no Court shall have any jurisdiction to extend the within award of spousal support either as to amount or duration after said date.'" (35 Cal. App.4th at p. 787, italics added.) The Court of Appeal ruled the judgment did not preclude modification of the spousal support award to extend its duration beyond the 60th month so long as the request was made prior to that date. (Id. at pp. 789-791.) The language at issue in the present case contains no ambiguity like that construed in Brown. In re Marriage of Olsen (1994) 24 Cal. App.4th 1702, 1704 [30 Cal. Rptr.2d 306], another decision relied upon by wife, involved "an unforeseen change in the law" which destroyed the effect of the court's prior order awarding the wife a share of the husband's military retirement benefits in lieu of spousal support. The court held although there was no retention of jurisdiction, it had inherent power to do justice under those circumstances. (Ibid.) In re Marriage of Harbach (1987) 195 Cal. App.3d 629, 634 [240 Cal. Rptr. 698], the final decision relied upon by the wife, involved a mutual mistake of fact underlying the parties' agreement. Jurisdiction to modify the decree had been retained by the trial court. No unforeseen change in the law or mutual *1442 mistake of fact has been asserted in the present case. Further, the trial court had no jurisdiction to modify the conditions governing termination of spousal support.
Finally, on appeal, wife asserts that husband harassed her. She alleges she was threatened to the point she was forced to drop out of school. However, in her declaration in support of her modification request, she stated she withdrew from school because her "[m]other was very ill." Wife informed husband of that decision to withdraw from school. Subsequent to the notification wife had dropped out of school, she alleges husband directed angry threats at her. In other words, she dropped out of school and thereafter, threats were directed at her by husband. No doubt, abusive or violent conduct which materially causes a spouse to withdraw from a college or university can equitably estop a party from relying on a settlement provision limiting a duty to pay all or part of tuition or other expenses. (3) The Courts of Appeal have held: "`Estoppel applies to prevent a person from asserting a right where his conduct ... makes it unconscionable for him to assert it.' [Citation.]" (In re Marriage of Stephenson (1984) 162 Cal. App.3d 1057, 1072 [209 Cal. Rptr. 383]; In re Marriage of Umphrey (1990) 218 Cal. App.3d 647, 658 [267 Cal. Rptr. 218]; In re Marriage of Recknor (1982) 138 Cal. App.3d 539, 546 [187 Cal. Rptr. 887, 34 A.L.R.4th 805].) The definition of equitable estoppel as applicable to family law issues was set forth by the Court of Appeal as follows: "The doctrine of equitable estoppel is `pre-eminently' the creature of equity and `[i]ts foundation is justice and good conscience.' (3 Pomeroy, Equity Jurisprudence, § 802, p. 180.) It has been defined by Professor Pomeroy as `... the effect of the voluntary conduct of a party whereby he is absolutely precluded, both at law and in equity, from asserting rights which might perhaps have otherwise existed, either of property, of contract, or of remedy, as against another person, who has in good faith relied upon such conduct, and has been led thereby to change his position for the worse, and who on his part acquires some corresponding right, either of property, or contract, or of remedy.' (3 Pomeroy, Equity Jurisprudence, § 804, p. 189.) In short, it is the object of equitable estoppel to prevent a person from asserting a right which has come into existence by contract, statute or other rule of law where, because of his conduct, silence or omission, it would be unconscionable to allow him to do so." (Brown v. Brown (1969) 274 Cal. App.2d 178, 188 [82 Cal. Rptr. 238].)
(1c) Application of the law to the present case supports the trial court's implicit determination no equitable estoppel bars husband from asserting his rights under the settlement agreement. Rulings concerning the existence of an estoppel are factual issues and are normally reserved for resolution by the trial court and will be upheld if supported by substantial evidence. (Conservatorship of Kevin M. (1996) 49 Cal. App.4th 79, 92 [56 Cal. Rptr.2d 765]; *1443 Brown & Bryant, Inc. v. Hartford Accident & Indemnity Co. (1994) 24 Cal. App.4th 247, 257, fn. 13 [29 Cal. Rptr.2d 144].) The trial court reasonably could have concluded that no threats or other unconscionable conduct on husband's part caused wife to drop out of school. No showing under oath was made concerning a single threat by husband prior to the decision by wife to withdraw from school. Her own evidence expressly states she withdrew from college because of her mother's illness. No equitable estoppel exists.
.... .... .... .... .... .... .... .[*]

IV. DISPOSITION
The order is affirmed. Walter P. Iberti is to recover his costs on appeal from Christine Patricia Flannery Iberti.
Grignon, J., and Armstrong, J., concurred.
A petition for a rehearing was denied July 14, 1997.
NOTES
[*] Pursuant to California Rules of Court, rules 976(b) and 976.1, this opinion is certified for publication with the exception of the indicated portions of part III.
[1] Wife also asserts husband harassed and threatened her causing her to drop out of college. However, wife's declaration does not support that claim. It states, instead, that she left college to spend time with her ailing mother.
[2] As noted above, the trial court expressly retained jurisdiction "to interpret this Judgment...."