Filed 1/14/14  Marriage of Woillard CA2/6

NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SIX

| | |
|---|---|
| In re the Marriage of CORA B. and JOHN R. WOILLARD. | 2d Civil No. B241536<br>(Super. Ct. No. D154961)<br>(Ventura County) |
| CORA B. WOILLARD,<br><br>    Appellant,<br><br>v.<br><br>JOHN R. WOILLARD,<br><br>    Respondent. | |

The Woillards' lengthy marriage terminated by dissolution in 1990.  A term of the judgment provided that respondent (John) would pay appellant (Cora) $4,000 per month in spousal support.  The order further provided the support was "non-modifiable," and that it would end upon John or Cora's death, or her remarriage or "cohabitation with an un-related male," and that she had a duty to notify John of her cohabitation.

In 2011, John sought to recover support payments he made after July 2005, contending his obligation to pay support terminated when Cora commenced her cohabitation with Keith McLeod (Keith).  As we shall explain, substantial evidence supports the trial court's finding that Cora's relationship with Keith established itself as "cohabitation," by August 1, 2005.  The record strongly supports the conclusion that the

relationship was tantamount to a marriage. The court correctly determined that John's obligation to pay support terminated upon Cora's cohabitation with Keith, and awarded John the sum of his subsequent support payments.

The marriage of Cora and John Woillard terminated in 1990. The judgment of dissolution incorporated their marital settlement agreement (MSA) and provided for non-modifiable spousal support. In 2011, John filed an order to show cause to terminate spousal support. He alleged his obligation to pay support terminated in July 2005, when Cora started cohabiting with an unrelated male. Cora appeals from the trial court's order awarding John $256,000 for spousal support payments he made after July 2005. Cora contends the trial court erred by concluding she was cohabiting with an unrelated male, and by "retroactively terminating [her] support." We affirm.

### FACTUAL AND PROCEDURAL BACKGROUND

Cora and John married in 1967 and separated in 1986. Their marriage terminated on December 18, 1990. The 1990 judgment incorporated their MSA and required that (1) John pay non-modifiable spousal support of $4,000 per month to Cora, until he died, or until Cora died, remarried, and/or cohabited with an unrelated male, and (2) Cora notify John "upon the event of her cohabitation with an un-related male."[1] After the termination of the marriage, Cora told "family and friends . . . that if she cohabitated, she would lose her spousal support."

---

[1] The relevant section of the judgment and agreement follows: "15. SPOUSAL SUPPORT. Respondent [John] shall pay to Petitioner [Cora] for her support and maintenance the sum of four thousand ($4,000.00) dollars per month, payable half on the first day and half on the fifteenth day of each calendar month commencing June 1, 1990 and continuing each month thereafter until [Cora] dies, remarries, and/or cohabitates with a non-related male and/or [John] dies. Said Spousal Support is non-modifiable. The Court shall not have the jurisdiction to either increase and/or decrease the amount of spousal support from the agreed sum of $4,000 per month. Neither party may seek an increase and/or decrease in Spousal Support payments. Neither party may seek a termination of Spousal Support except on grounds of [Cora's] death, remarriage, and/or cohabitation with an un-related male. The Court shall not retain jurisdiction to terminate spousal support except upon the grounds of [Cora's] death, remarriage, and/or cohabitation with an un-related male. [Cora] shall notify [John] upon the event of her cohabitation with an un-related male."

In 2000, Cora began an exclusive dating relationship with Keith McLeod. She quickly made sure he read the MSA's provision for the termination of spousal support upon her cohabitation with an unrelated male. Throughout their relationship, Cora and Keith shared significant resources. In 2001, she loaned him approximately $30,000 to buy a home in Pine Mountain. He repaid that loan. They were engaged in November 2004. Cora always wore her engagement ring.

In June 2005, Keith was hospitalized for about three weeks and diagnosed with end stage renal failure. After his release, he received dialysis treatments three times a week for "a few years." At the time of the proceedings below, he received just one treatment each week. Keith always stayed with Cora in her Thousand Oaks home on the night before his treatment. He had a key to her home, where he kept clothing and personal property, and received his mail. Cora was the beneficiary of Keith's insurance.

On August 8, 2005, Cora and Keith purchased a boat for $210,000, as joint tenants. Their $200,000 boat loan was secured by Cora's equity in her home. Keith made the boat loan payments. He slept on the boat when he did not sleep at Cora's home. On most weekends and holidays, they stayed together on the boat, for one or two nights. Cora had "unrestricted access to the boat." They vacationed together, at Keith's expense, and attended all family and social functions together.

In 2006, Cora acquired two rental condominiums in Port Hueneme in a tax-free exchange for her unimproved land in Bell Canyon, plus $60,000. She paid Keith a $60,000 finder's fee. Cora owned the condominiums "free and clear," and obtained a joint checking account with Keith for condominium expenses and rental income. He controlled that account and did not disburse any profits to Cora before 2011. The trial court explicitly rejected Cora's contention that the condominiums did not generate any profits.

Cora never notified John that she was cohabiting with Keith. John paid her monthly spousal support through November 2010. On January 26, 2011, John filed an order to show cause for termination of spousal support, as of July 1, 2005, the date on

3

which he alleged Cora was cohabiting with Keith.[2]  John further alleged Cora failed to notify him of her cohabitation, and he was unaware of it until December 2010.  He asserted that Cora's cohabitation terminated spousal support as of July 2005, and required her to refund all subsequent support payments.  Following an evidentiary hearing, the trial court made several findings, including the following:  (1) Cora had been cohabiting with Keith since August 1, 2005; (2) Cora was "patently deceptive" and made "considered efforts to conceal her significant, monogamous relationships from John;" and (3) Cora and Keith "bought the boat as a place that Keith could 'live apart' from [her] to give the distinct appearance of living separately."  The court concluded that John's obligation to pay spousal support "terminated pursuant to the express agreement of the parties on August 1, 2005," and John overpaid Cora $256,000 of spousal support.  The court awarded John $256,000, and reserved any issue of interest.

## DISCUSSION

### Cohabitation

Cora claims that she was not cohabiting with Keith because they maintained separate residences and did not live together.  We disagree.

### Standard of Review

"'"A judgment or order of the lower court is *presumed correct*.  All intendments and presumptions are indulged to support it on matters as to which the record is silent, and error must be affirmatively shown.  This is not only a general principle of appellate practice but an ingredient of the constitutional doctrine of reversible error."  [Citations.]'"  (*In re Marriage of Bower* (2002) 96 Cal.App.4th 893, 898 (*Bower*).)

The cohabitation issue presents a mixed question of law and fact that "requires a critical consideration, in a factual context, of legal principles and their underlying values . . . ."  (*Crocker National Bank v. City and County of San Francisco*

---

[2] On June 17, 2011, the court allowed John to amend his order to show cause to allege that Cora cohabited with George McKeehan from May 1993 through 1994.  The court concluded John failed to establish that Cora was cohabiting with George.

4

(1989) 49 Cal.3d 881, 888.)  Where the "pertinent inquiry requires application of experience with human affairs, the question is predominantly factual and its determination is reviewed under the substantial-evidence test." (*Ibid*.)  Cohabitation is such an issue.  (See *In re Marriage of Davis* (2013) 220 Cal.App.4th 1109, 1118 [substantial evidence review applies to factual issue of the date of separation].)[3]

In deciding whether parties are cohabiting, courts consider the personal, financial, and residential aspects of the parties' relationship.[4]  Cohabitation involves a committed personal relationship, which can be sexual or romantic, or a homemaker-companion relationship.  (*In re Marriage of Thweatt* (1979) 96 Cal.App.3d 530, 535; *Bower, supra*, 96 Cal.App.4th at p. 901 [concerning statutory requests for modification or termination of spousal support under former Civ. Code, § 4801.5 (*Thweatt*) or Fam. Code, § 4323 (*Bower*)].)[5]  Cohabitation also involves the sharing of significant finances or labor.  (*In re Marriage of Geraci* (2006) 144 Cal.App.4th 1278, 1299 [§ 4323].)  In *Geraci*, the court found ample evidence of cohabitation where a supported spouse lived with her boyfriend, who provided her with a car and a credit card.  She did not pay rent but contributed domestic services to the household.  She owed her boyfriend more than $30,000 in back rent and other debt, to be paid when she was financially able to do so. (*Ibid.*)  In most cases addressing cohabitation, the residential aspect of the relationship concerns payment for housing, with no dispute that the parties share housing.  (See, e.g., *Geraci, supra*, at p. 1299.)

Cora claims she was not cohabiting with Keith because they had separate residences which they did not share.  The record belies her claim.  Cora and Keith shared

---

[3] Cora argues that a de novo standard should apply to our review, and cites *In re Marriage of Norviel* (2002) 102 Cal.App.4th 1152, 1157, which concerned the issue of the date of separation.  Based on the facts before us, we would affirm the trial court's determination under either standard of review.

[4] In resolving the cohabitation issue, the trial court relied in part on penal statues and criminal cases which address or define cohabitation in that distinct context.  We conclude they have no application to the cohabitation issue before us.

[5] All further statutory references are to the Family Code unless otherwise stated.

5

two residences, their boat and her home, and slept together four or five nights a week, for at least a few years, starting in August 2005.  Keith used Cora's home address as his, and received mail there.  They shared substantial financial benefits and responsibilities, and attended social and family functions together. Their "affectionate, and devoted relationship" has lasted more than 10 years.  Taken together, the totality of the circumstances of their relationship provides substantial evidence that Cora and Keith were cohabiting in August 2005.

*Retroactivity*

Cora argues that the trial court violated section 3603 and misapplied section 4334 by "retroactively" terminating support, and awarding John $256,000 for support payments he made before he filed this action.  We disagree.

*Standard of Review*

We apply the de novo standard of review to a trial court's interpretation of a statute.  (*Kavanaugh v. West Sonoma County Union High School Dist*. (2003) 29 Cal.4th 911, 916.)

"'Marital settlement agreements incorporated into a dissolution judgment are construed under the statutory rules governing the interpretations of contracts generally.'" (*In re Marriage of Simundza* (2004) 121 Cal.App.4th 1513, 1518.)  We conduct an independent review of the agreement that is the subject of the appeal.  (*In re Marriage of Smith* (2007) 148 Cal.App.4th 1115, 1120.)  We construe the agreement under the rules governing the interpretation of contracts.  (*In re Marriage of Iberti* (1997) 55 Cal.App.4th 1434, 1439 (*Iberti*).)

Cora relies on section 3603[6] in arguing that the court erroneously terminated her support retroactively.  Her reliance is misplaced. That section only applies

---

**6** Section 3603 states as follows:  "An order made pursuant to this chapter may be modified or terminated at any time except as to an amount that accrued before the date of the filing of the notice of motion or order to show cause to modify or terminate."

to support awards made while a proceeding is pending.**7**  Section 3603 does not apply to the contractually based non-modifiable spousal support at issue here, which was a term of the parties' final judgment of dissolution.

Further, the *court* did not terminate support "retroactively," as Cora claims. Rather, John's obligation to pay spousal support terminated pursuant to the explicit terms of the MSA.  The MSA obligated John to pay Cora support monthly until one of several events occurred, including her cohabitation with an unrelated male.  "When the language of the judgment incorporating the marital settlement agreement is clear, explicit, and unequivocal, and there is no ambiguity, the court will enforce the express language." (*Iberti, supra,* 55 Cal.App.4th at p. 1440.)  Here, because Cora and Keith were cohabiting on August 1, 2005, John's obligation to pay support terminated on that date, pursuant to the MSA.

We also reject Cora's argument that the trial court erred by relying upon section 4334 in ordering her to pay John for support payments he made before January 2011, when he filed this action.  Cora first argues that her cohabitation with an unrelated male is not a "contingency" which can terminate support within the meaning of section 4334.  She is wrong.  Subdivision (a) of that section provides:  "If a court orders spousal support for a contingent period of time, the obligation of the supporting party terminates on the happening of the contingency.  The court may . . . order the supported party to notify the supporting party, or the supporting party's attorney of record, of the happening of the contingency."  Section 4334 does not expressly define contingency, or exclude any event (including cohabitation) from operating as a contingency that terminates support. The plain language of the MSA specifies only a few events, including Cora's cohabitation

---

**7** Section 3600 provides:  "*During the pendency of any proceeding for dissolution of marriage* or for legal separation of the parties or under Division 8 (commencing with Section 3000) (custody of children) or in any proceeding where there is at issue the support of a minor child or a child for whom support is authorized under Section 3901 or 3910, the court may order (a) the husband or wife to pay any amount that is necessary for the support of the wife or husband, consistent with the requirements of subdivisions (i) and (m) of Section 4320 and Section 4325, or (b) either or both parents to pay any amount necessary for the support of the child, as the case may be."  (Italics added.)

with an unrelated male, that terminate spousal support. The record leaves no doubt that Cora understood that contingency.

Cora also argues the trial court erred, or acted unfairly, in relying upon section 4334, subdivision (b), to award John the value of payments he made before he filed this action. We disagree. Section 4334, subdivision (b), provides as follows: "If the supported party fails to notify the supporting party, . . . of the happening of the contingency and continues to accept spousal support payments, the supported party shall refund payments received that accrued after the happening of the contingency . . . ."

In issuing the 1990 judgment, the court ordered Cora to notify John if she was cohabiting with an unrelated male, as required by the MSA. Because she failed to do so, section 4334, subdivision (b), authorized the court to order Cora to repay John for payments she received when she was cohabiting with Keith. Despite that, Cora argues she had no duty to notify him, because she did not believe she was cohabiting with Keith. Cora agreed to the terms of the MSA. Her attorney participated in its preparation. The 1990 judgment and the MSA expressly required her to notify John of her cohabitation with an unrelated male. The record contains overwhelming evidence that she was cohabiting with Keith. Under the circumstances, the trial court reasonably concluded that Cora's subjective belief did not excuse her failure to notify John of their cohabitation.

DISPOSTION

The judgment is affirmed. Respondent is awarded costs on appeal.

NOT TO BE PUBLISHED.


PERREN, J.

We concur:



GILBERT, P. J.



YEGAN, J.

8

John R. Smiley, Judge

Superior Court County of Ventura

_____

Taylor, McCord, Praver & Cherry and Patrick G. Cherry for Appellant.

Buter, Buzard, Fishbein & Royce and Gary Fishbein for Respondent.