Filed 6/5/26

**CERTIFIED FOR PARTIAL PUBLICATION\***

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION ONE

| | |
|---|---|
| In re the Marriage of JASON McCONNELL and SUZANNE JAHNKE. | |
| JASON McCONNELL,<br><br>        Appellant,<br><br>v.<br><br>SUZANNE JAHNKE,<br><br>        Respondent. | A172525<br><br>(Mendocino County Super. Ct. No. SCUK-CVFL-2020-74287) |

Appellant Jason McConnell challenges a judgment entered in this marital dissolution action based on a written settlement agreement between him and his ex-wife, Suzanne Jahnke. In his primary claim, McConnell contends that the trial court erred by ruling that the parties' agreement that "awarded" Jahnke the marital "home, and all debts thereon" did not require her to remove him from their jointly held mortgage.

We reject this contention and McConnell's other claims and affirm. In the published part of the opinion, we conclude that although the provision at issue made Jahnke solely responsible for the mortgage, it unambiguously did not include an implied term requiring her to remove McConnell from the

---

\* Pursuant to California Rules of Court, rules 8.1105(b) and 8.1110, this opinion is certified for publication with the exception of part II.B.

mortgage. In so concluding, we hold that a divorcing party who agrees to assume a joint mortgage in a property settlement cannot be forced to remove the other spouse from the mortgage absent an explicit term requiring it.

I.
FACTUAL AND PROCEDURAL
BACKGROUND

Jahnke and McConnell married on December 23, 2005. They worked as vintners and owned over 200 acres of land near Ukiah, living together in a home on Rivino Ranch Road that Jahnke built before the marriage (the home). In April 2015, Jahnke added McConnell to the home's title. The following February, the parties obtained a $700,000 mortgage on the home with a Mendocino County bank.

Jahnke and McConnell separated on April 25, 2020. Two months later, Jahnke filed a petition for dissolution of marriage. On December 30, 2021, the marriage was terminated by a status-only judgment. At the time the parties separated, the balance on the home's mortgage was approximately $650,000. The order does not appear in our record, but the trial court apparently directed Jahnke to pay spousal support and cover the mortgage, even though McConnell continued living in the home.

In the course of contentious attempts to disentangle the parties' property, Jahnke apparently secured a writ of possession against McConnell requiring him to remove his personal property from the home. McConnell apparently obtained a domestic violence restraining order against Jahnke, and she sought one against him, appealing when it was denied.

After settlement discussions were unsuccessful, the parties appeared for a trial on March 11, 2024. During a recess, they reached an agreement, and when they returned they stated several components of their agreement for the record. Later that afternoon, the parties filed their written

2

memorandum of understanding (MOU) and confirmed on the record that it was "what [they were] agreeing to."

In the MOU, the parties agreed that Jahnke would receive virtually all the community property. She was "awarded . . . [¶] . . . [¶] [t]he real property . . . at . . . Rivino Ranch Road, . . .and all debts thereon." Jahnke was also "awarded [¶] . . . [a]ny and all interest held by [McConnell]," including "debts [and] liabilities," in two companies: Pink Sands, Inc., which operated the winery and tasting room, and Riverwine, LLC, which held title to most of the acreage. McConnell, in turn, received an equalization payment of $3,800,000 and certain personal property, including a 2019 Dodge RAM truck. The MOU set a schedule for Jahnke to make equalization payments to McConnell and required McConnell to execute any documents needed to transfer his interests in the home and the two companies within 10 days of receiving the documents.

Under the MOU, McConnell agreed to dismiss his restraining order against Jahnke, and Jahnke agreed to dismiss her appeal from the denial of a restraining order against McConnell. The parties also agreed to release each other from all known claims, including claims for spousal support, except as otherwise provided in the MOU.

The MOU provided that it contained "all of the material terms of the parties' settlement" and was enforceable under Code of Civil Procedure section 664.6. The MOU further stated that although the parties "contemplate[d] executing a full Marital Settlement Agreement," the MOU was "binding and enforceable" even if no such agreement was ultimately executed. As it turned out, conflict arose over whether to include a provision requiring Jahnke to remove McConnell from the home's mortgage, and a full settlement agreement was never finalized.

3

Instead, in September 2024, Jahnke filed a request for an order for entry of judgment consistent with the MOU. McConnell also filed his own request for entry of judgment in which he asked the trial court to order Jahnke to remove him as a borrower on the mortgage. In his papers, McConnell mentioned various points during the settlement negotiations at which Jahnke purportedly agreed that he should be removed from the mortgage. In response, Jahnke filed a motion to exclude parol evidence of the meaning of the MOU provision awarding her the home, which McConnell opposed.

On December 30, 2024, after a hearing on the competing requests to enter judgment, the trial court ruled in Jahnke's favor. The court concluded that the provision awarding Jahnke the home was unambiguous and did not require her to remove McConnell from the mortgage. In explaining its reasoning, the court noted the absence of any "mechanism" for removing McConnell, in contrast to other provisions describing specific actions and timelines. The court also stated that it had considered Family Code section 916, subdivision (b), which Jahnke's counsel argued "contemplated . . . instances where . . . one debt is assigned to a specific spouse and the other spouse may remain liable to a third party." The court then entered judgment on the terms of the MOU without hearing any parol evidence.

After the trial court announced its ruling, McConnell asked that the transcript from the March 11, 2024 hearing be attached to the judgment. He did so on the basis that the transcript contained "agreements placed on the record" both before and after the MOU was executed. The court denied the request, finding that the parties' agreements were "subsumed into the MOU," and the judgment did not include the transcript.

4

## II.
## DISCUSSION

*A. The MOU Does Not Require Jahnke to Remove McConnell from the Mortgage, and Related Parol Evidence Was Properly Excluded.*

McConnell claims that the provision in the MOU that "awarded" Jahnke the home "and all debts thereon" unambiguously requires her to remove him from the mortgage. Alternatively, he claims that even if the MOU is ambiguous on this point, the trial court should have admitted parol evidence of the parties' intent to impose this requirement. We are not persuaded on either count.

### 1. General legal standards

An agreement pertaining to marital dissolution proceedings is construed under the statutory rules governing the interpretations of contracts generally. (Civ. Code,[1] § 1635; *In re Marriage of Iberti* (1997) 55 Cal.App.4th 1434, 1439.) The basic goal of contract interpretation is to give effect to the parties' mutual intent at the time of contracting. (§ 1636; *Bank of the West v. Superior Court* (1992) 2 Cal.4th 1254, 1264.) When a contract is reduced to writing, the parties' intention is determined "from the writing alone, if possible." (§ 1639; *PV Little Italy, LLC v. MetroWork Condominium Assn.* (2012) 210 Cal.App.4th 132, 145.) " 'We consider the contract as a whole and interpret its language in context so as to give effect to each provision, rather than interpret contractual language in isolation.' " (*Dowling v. Farmers Ins. Exchange* (2012) 208 Cal.App.4th 685, 695 (*Dowling*); § 1641.) Where, as here, no extrinsic evidence was admitted, we review de novo the trial court's interpretation of a contract. (*In re Marriage*

---

[1] All further unspecified statutory references are to the Civil Code.

5

*of Lafkas* (2015) 237 Cal.App.4th 921, 932; *Morgan v. City of Los Angeles Bd. of Pension Comrs.* (2000) 85 Cal.App.4th 836, 843.)

The words in a contract carry their ordinary and popular meaning unless the parties' usage indicates " 'a technical sense or a special meaning.' " (*Dowling, supra*, 208 Cal.App.4th at p. 695; § 1644.)  If a contract's "language is clear and explicit, and does not involve an absurdity," the unambiguous meaning governs.  (§ 1638; *PV Little Italy, LLC v. MetroWork Condominium Assn., supra*, 210 Cal.App.4th at pp. 145–146.)  Ambiguity arises if a word or phrase is reasonably susceptible of more than one meaning.  (*In re Marriage of Iberti, supra*, 55 Cal.App.4th at p. 1439.)  Thus, " '[w]hen a dispute arises over the meaning of contract language, the first question . . . is whether the language is "reasonably susceptible" to the interpretation urged by the party. If it is not, the case is over.' " (*Cedars-Sinai Medical Center v. Shewry* (2006) 137 Cal.App.4th 964, 979.)

> 2.  The MOU does not contain an implied term requiring Jahnke to remove McConnell from the mortgage.

The primary issue we must resolve is whether the provision that "awarded" the "home, and all debts thereon" to Jahnke required her to remove McConnell from the mortgage.  We conclude it did not.

The ordinary meaning of the verb "award" is "to confer or bestow [something] as being deserved or merited or needed" or "to give by judicial decree or after careful consideration."  (Merriam-Webster Collegiate Dict. (11th ed. 2014) p. 86.)  According to McConnell, the provision at issue, when read in context, displays a clear intent for Jahnke "to assume the debt as her separate obligation."  Jahnke interprets the provision to mean that she "was assigned the responsibility for the mortgage debt as between the parties."  In other words, the parties agree that the awarding of the home and all debts thereon to Jahnke made her solely responsible for paying the mortgage.

6

Where the parties differ is on the issue whether Jahnke's assumption of an obligation to pay the mortgage necessarily included an obligation to remove McConnell from that loan. According to McConnell, "the only way to effectuate" the parties' intent that he "would no longer have continuing liability for" the mortgage was "for [Jahnke] to take him off the debt." Jahnke responds that McConnell's "interpretation would violate the rules of contractual interpretation by inserting a new term into the agreement."

Jahnke has the better argument. "Implied terms are not favored in the law, and should be read into contracts only upon grounds of obvious necessity." (*In re Marriage of Corona* (2009) 172 Cal.App.4th 1205, 1222.) McConnell relies on section 1655, which provides that terms "*necessary* to make a contract reasonable . . . are implied, in respect to matters concerning which the contract manifests no contrary intention," and section 1656, which provides that "[a]ll things in law or usage [that] are considered . . . as *necessary* to carry [a contract] into effect . . . are implied therefrom, unless some of them are expressly mentioned therein, when all other things of the same class are deemed to be excluded." (Italics added.) To demonstrate that a proposed implied provision is legally necessary under these statutes, " '[i]t is not enough to say [the provision] is necessary to make the contract fair, or that it ought to have contained a stipulation which is not found in it, or that, without such covenant, it would be improvident or unwise or would operate unjustly; for [parties] have the right to make such contracts.' " (*Corona*, at p. 1223.)

McConnell does not adequately explain why requiring Jahnke to remove his name from the mortgage—which, depending on the lender's response, would potentially entail refinancing the mortgage or even paying it off entirely—was the *only* way to ensure performance of the term making her

7

responsible for that debt. As Jahnke observes, a person may remain liable to a creditor even if a debt is assigned to that person's spouse, but the person has a right of reimbursement under Family Code section 916, subdivision (b), if the spouse fails to pay the debt. In other words, the award of a previously joint debt to one spouse does not require the underlying contractual obligations to be reconfigured, and we agree with the trial court that the parties were presumably aware of this principle. (See *Coral Farms, L.P. v. Mahony* (2021) 63 Cal.App.5th 719, 731 ["The incorporation of current law into a contract is presumed and does not require a deliberate expression by the parties"].) The fact that a right of reimbursement might not fully protect McConnell's interests does not mean we can read into the MOU more favorable terms. (See *In re Marriage of Corona*, *supra*, 172 Cal.App.4th at p. 1223.)

Other parts of the MOU support the interpretation that the provision at issue does not include an implied term requiring Jahnke to remove McConnell from the mortgage.[2] The second sentence of the provision awarding the home and all debt thereon to Jahnke expressly requires McConnell to execute an interspousal grant deed within 10 days of being presented with the document. The MOU also contains similar requirements involving the execution of documents necessary to transfer McConnell's interests in Pink Sands and Riverwine. We agree with the trial court that the absence of a comparable term requiring Jahnke to take specific action to remove McConnell from the mortgage further establishes that there was no

---

[2] In his reply brief, McConnell claims that a court may consider only the contractual term at issue, not other parts of the agreement, when determining whether the term is unambiguous. None of the authorities he cites support this claim, which is simply untrue. (See § 1641 [contract must be interpreted as a whole]; *Dowling*, *supra*, 208 Cal.App.4th at p. 695 [same].)

joint intent to impose such a duty on her. In short, we reject McConnell's interpretation of the MOU and conclude that the agreement does not require Jahnke to remove him from the mortgage.

### 3. Extrinsic evidence was inadmissible to construe the term awarding the home and debts thereon to Jahnke.

McConnell alternatively claims that the provision at issue "is at the very least ambiguous," meaning the trial court erred by failing to consider extrinsic evidence of its meaning. We reject this claim.

Generally speaking, under the parol evidence rule, " 'extrinsic evidence, whether oral or written, [is inadmissible] to vary, alter[,] or add to the terms of an integrated written instrument.' " (*Casa Herrera, Inc. v. Beydoun* (2004) 32 Cal.4th 336, 343.) "Although the rule results in the exclusion of evidence, it 'is not a rule of evidence but is one of substantive law,' " under which "the terms contained in an integrated written agreement may not be contradicted by prior or contemporaneous agreements." (*Id.* at pp. 343–344, italics omitted.)

Parol evidence is admissible "to construe a written instrument when its language is ambiguous. The test of whether parol evidence is admissible . . . is not whether the language appears to the court to be unambiguous, but whether the evidence presented is relevant to prove a meaning to which the language is 'reasonably susceptible.' " (*Winet v. Price* (1992) 4 Cal.App.4th 1159, 1165.) Whether a term is reasonably susceptible to more than one interpretation, such that parol evidence should be considered, is a question of law we review de novo. (*Thompson v. Asimos* (2016) 6 Cal.App.5th 970, 986.)

Jahnke objects that McConnell forfeited this claim by failing to make a sufficient offer of proof below and failing to address on appeal the issue of prejudice. We need not resolve these arguments, however, because we have already concluded that the MOU unambiguously did not require Jahnke to

9

remove McConnell from the mortgage. Put another way, the term awarding Jahnke the home and the debts thereon is not reasonably susceptible to McConnell's contrary interpretation, which would require us to read an unnecessary requirement into the contract. As a result, the trial court did not err by declining to consider extrinsic evidence of the parties' intent on this issue.

> ### B. *McConnell Is Not Entitled to Relief Based on the Trial Court's Refusal to Include Oral Stipulations in the Judgment.*

McConnell also claims that the MOU is not integrated, meaning that the judgment should have incorporated certain oral stipulations put on the record at the March 11, 2024 hearing. We are not persuaded.

McConnell identifies four purported oral stipulations that he claims the judgment should have included. The first three statements were made after the parties informed the trial court that they had settled but before they submitted the MOU. The first was that Jahnke was "taking on any past or future tax liabilities that may be associated with" the two companies she was awarded. The second was Jahnke's counsel's statement that his client "believe[d]" the Dodge Ram truck had "been paid [for] in full," which McConnell equates to a stipulation that he would receive the truck "debt free." The third was that the parties agreed to "waive any and all claims they have against each other" under section 1542, which was also reiterated after the MOU was presented. Finally, the fourth, which was made only after the MOU was presented, was Jahnke's "stipulat[ion] there would be no further enforcement on the remaining terms of the writ of possession" against McConnell.

Under Code of Civil Procedure section 1856, there are "two levels of contract integration or finality: (1) the parties intended the writing to be the final expression of their agreement; and (2) the parties intended the writing

10

to be the complete and exclusive statement of the terms of their agreement."
(*Kanno v. Marwit Capital Partners II, L.P.* (2017) 18 Cal.App.5th 987, 999.)
If a contract falls into the first level, as a final expression, "then a prior or
contemporaneous oral agreement is admissible if it does not contradict the
writing, and evidence of consistent additional terms may be used to explain
or supplement the writing." (*Id.* at pp. 999–1000; Code Civ. Proc., § 1856,
subd. (a).) If a contract falls into the second level, as a complete and
exclusive statement, "evidence of consistent additional terms may *not* be used
to explain or supplement the writing." (*Kanno*, at p. 1000, italics added; Code
Civ. Proc., § 1856, subd. (b).) A ruling on the issue of integration is reviewed
de novo " 'when the evidence of integration is not in dispute' " and for
substantial evidence when the issue "requires a resolution of a conflict in the
evidence or of credibility." (*Kanno*, at p. 1001.)

We need not determine whether or to what extent the MOU is
integrated, because McConnell fails to demonstrate that the trial court's
refusal to attach the March 11, 2024 hearing transcript to the judgment was
prejudicial. We are aware of no current dispute about the MOU's
interpretation on which any of the oral stipulations would bear. McConnell
does not state, for example, that the truck does have a debt on it despite
Jahnke's representation otherwise or that she has pursued the writ of
possession despite promising not to do so. And even if a dispute did arise,
McConnell provides no authority to suggest that the fact the transcript was
not attached to the judgment would itself prevent future consideration of the
transcript's contents. Thus, although the integration issue certainly affects
whether the oral stipulations might one day be used to construe the MOU, we
do not see how McConnell is or could be harmed by their omission from the
judgment.

11

## III.
### DISPOSITION

The judgment is affirmed.  Jahnke is awarded her costs on appeal.

_____

Humes, P. J.


WE CONCUR:



_____

Banke, J.



_____

Langhorne Wilson, J.



*McConnell v. Jahnke*  A172525

13

Trial Court:  Mendocino Superior Court

Trial Judge:  Hon. Patrick M. Pekin

Counsel:

Law Offices of Wallace Francis PC, Wallace Francis; Law Office of Peter Gold, Peter Gold for Appellant.

Walzer Melcher & Yoda LLP, Christopher C. Melcher, Sara E. Edwards for Respondent.

*McConnell v. Jahnke*  A172525